EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 10-345-GWU

LAWRENCE DARREN LORD,                                                            PLAINTIFF,

VS.                              **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                                    DEFENDANT.

## INTRODUCTION

Lawrence Lord brought this action to obtain judicial review of an administrative denial decision on his application for Disability Insurance Benefits. The case is before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of

      Impairments). If so, disability is conclusively presumed and benefits are awarded.

4.    At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work. If so, the claimant is not disabled and the claim is denied. If the plaintiff carries this burden, a prima facie case of disability is established.

5.    If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

    Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

    In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-

ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical

vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e);

4

however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Id. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Lord, a 40-year-old former welder, salvage worker, railroad car builder, maintenance worker, and appliance installer with a high school education, suffered from impairments related to degenerative changes of the lumbar spine and bilateral carpal tunnel syndrome. (Tr. 13, 17). While the plaintiff was found to be unable to return to his past relevant work, the ALJ determined that he retained the residual functional capacity to perform a restricted range of light level work. (Tr. 14-16). Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled. (Tr. 17-18). The ALJ based this decision, in large part, upon the testimony of a vocational expert. (Tr. 17).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence. Therefore, the court

10-345  Lawrence Darren Lore

must grant the defendant's summary judgment motion and deny that of the plaintiff.

The hypothetical question initially presented to Vocational Expert William Ellis included an exertional limitation to light level work, restricted from a full range by such non-exertional restrictions as: (1) an inability to ever climb ladders, ropes or scaffolds; (2) an inability to more than occasionally climb stairs and ramps, stoop, kneel, crouch, or crawl; (3) an inability to more than frequently balance with a need to exercise caution on uneven terrain; (4) a need to avoid exposure to work place hazards such as exposure to unprotected heights and dangerous moving machinery; and (5) a need to avoid exposure to vibrations.  (Tr. 52-53).  In response, Ellis identified a significant number of jobs which could still be performed including office helper (87,000 national jobs), rental clerk (181,000 national jobs), and ticket taker (118,000 national jobs).  (Tr. 53).  The ALJ then added such limitations as an inability to lift more than 15 pounds from the floor to waist level, an inability to sit for more than 90 minutes without interruption, stand for more than 60 minutes without interruption, and an inability to more than occasionally perform overhead work.[1]  (Id.).  The witness testified that the sit/stand option would reduce the available jobs numbers by 50 percent.  (Tr. 54).  Therefore, assuming that the vocational factors considered by Ellis fairly depicted Lord's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

---

[1] These restrictions came from the opinion of Dr. Robert Hoskins.  (Tr. 776-777).

10-345  Lawrence Darren Lore

With regard to the framing of the physical factors of the hypothetical question, the undersigned finds no error.  Dr. William Lester, a treating source, indicated in January of 2008 that Lord could return to light duty work with such restrictions as a need to avoid lifting more than 30 pounds, pushing and pulling more than 60 pounds and performing repetitive bending.  (Tr. 725).  The ALJ's findings were essentially consistent with this opinion. While the repetitive bending restriction was not specifically included by the ALJ, the limitations concerning no more than occasional stooping, kneeling, crouching and crawling would accommodate this limitation since these are all progressive forms of bending.  See Social Security Ruling 85-15.  Therefore, Dr. Lester's opinion provides strong support for the administrative denial decision.

Dr. Paul Boulos of Neurosurgery and Spine Consultants of East Tennessee, also treated Lord and opined in May of 2008 that the plaintiff had reached maximum medical improvement and would be restricted from lifting more than 30 pounds and pushing or pulling more than 60 pounds.  (Tr. 243).  The ALJ's findings were compatible with this opinion.

Dr. Robert Brown reviewed the record in May of 2009 and opined that Lord would be limited to light level work restricted from a full range by an inabilty to ever climb ladders, ropes or scaffolds, an inability to more than occasionally stoop, kneel, crouch, crawl and climb ramps or stairs, an inability to more than frequently balance,

and a need to avoid all exposure to vibration and hazards. (Tr. 679-686). The ALJ's findings were essentially consistent with this opinion.

More severe physical restrictions than those found by the ALJ were not identified by such treating and examining sources as the staff at Appalachian Regional Healthcare (Tr. 197-221), Dr. Pramod Reddy (Tr. 251-258), the staff at the Pineville Community Hospital (Tr. 687-689), Dr. Rahul Dixit (Tr. 696-703, 708-710), Dr. William Brooks (Tr. 704-707), the staff at Tri-State Medical Clinic (Tr. 711-719), the staff at the Baptist Regional Medical Center (Tr. 740-758), Dr. Aqeel Mandviwala (Tr. 824-828), Dr. Alam Khan (Tr. 834-841) and the staff at St. Joseph London (Tr. 840-843). These reports provide additional support for the administrative denial decision.

Lord argues that the ALJ erred in rejecting the opinion of Dr. Richard Carter, his treating physician at the Barbourville Family Health Center. Dr. Carter made a number of statements indicating that the plaintiff was disabled. (Tr. 767, 786, 789). These opinions would go to the ultimate issue of disability and, so, would not be binding on the ALJ under the federal regulations. 20 C.F.R. § 404.1527(e)(1).

Dr. Carter also submitted a statement in December of 2009, noting diagnoses of chronic back pain/strain, mild to moderate depression, lumbar radiculopathy and paresthesia. (Tr. 821). The doctor indicated that Lord's pain and other symptoms would frequently interfere with his attention and concentration for even simple work tasks, he would be incapable of even "low stress" jobs and he

8

would miss more than 4 days a month of work due to these problems. The ALJ felt that these restrictions related to the physician's diagnosis of depression. (Tr. 14). The ALJ further indicated that the treatment history of Dr. Carter concerning the plaintiff did not support the existence of such severe limitations since the doctor had at most noted only the existence of "mild" depression and there was no history of psychiatric hospitalizations or the use of psychotropic medications. (Id.). The plaintiff concedes that these are good reasons for rejecting the mental restrictions but asserts that the ALJ erred by failing to address the physical restrictions as required in <u>Wilson v. Commissioner of Social Security</u>, 378 F.3d 541 (6th Cir. 2004). Docket Entry No. 15, p. 7. The defendant asserts that Dr. Carter's restrictions relate to his mental condition and did not offer an opinion concerning physical limitations. The court agrees with the defendant that the restrictions noted by Dr. Carter appear to relate primarily to his mental status. To the extent that they might not, the ALJ did cite the opinions of Dr. Lester, Dr. Dixit, Dr. Brooks and Dr. Robert Hoskins, none of whom identified such physical restrictions. (Tr. 15-16). Dr. Boulos also did not mention these restrictions. These opinions offset that of Dr. Carter. Therefore, the court finds no error with the ALJ's handling of Dr. Carter's opinion.

Lord also argues that the ALJ erred by relying upon the opinion of David Jansen. Jansen completed the initial assessment when the plaintiff filed his disability claim. (Tr. 671-678). Jansen is not an "acceptable medical source" under the federal regulations at 20 C.F.R. 404.1513. The claimant notes that the

Programs Operations Manual System (POMS) indicates that the opinion of such a source is entitled to no weight. POMS at DI24510.05. While the ALJ did cite this opinion in support of the denial decision (Tr. 15), the opinion of Dr. Brown, medical reviewer at the reconsideration level, as well as the opinions of Dr. Lester, Dr. Hoskins, Dr. Dixit and Dr. Brooks were also cited. (Tr. 15-16). Dr. Brown, Dr. Lester, Dr. Hoskins, Dr. Dixit and Dr. Brooks are all "acceptable medical sources" under the federal regulations. 20 C.F.R. § 404.1513. Dr. Boulos also provides support for the administrative decision. Therefore, the court finds any error in citing Jansen to be harmless.

Lord asserts that the ALJ indicated that he was going to adopt all of the physical restrictions reported by Dr. Hoskins but erred by omitting significant limitations noted by the physician concerning repetitive stooping, the need to stand and walk for 10 to 15 minutes after 90 minutes of continuous sitting and the need to sit for 10 to 15 minutes after standing or walking for 60 continuous minutes. (Tr. 776-777). However, the undersigned does not agree with the plaintiff that the ALJ intended to adopt all the restrictions noted by Dr. Hoskins. The ALJ noted that he was adopting limitations indicated by Dr. Hoskins such as the 30 pound lifting restriction with a 15 pound lifting limitation below the waist, the inability to perform repetitive or prolonged overhead work, no more than 90 minutes of continuous sitting, no more than 60 minutes of continuous standing or walking, an inability to perform repetitive stooping or crouching, a need to avoid heavy pushing, pulling or

carrying, an inability to perform work exposing him to vibrations, and a need to avoid sustained posturing. (Tr. 16). However, the ALJ only indicated he was adopting these restrictions. (Tr. 15-16). He did not cite the restrictions concerning the need to stand and walk for 10 to 15 minutes after 90 minutes of continuous sitting and the need to sit for 10 to 15 minutes after standing or walking for 60 continuous minutes.

The defendant has asserted that the ALJ's limitation concerning occasional stooping covers Dr. Hoskins's limitation concerning no repetitive stooping. The plaintiff cites Hensley v. Commissioner of Social Security, 573 F.3d, 263, 265 (6th Cir. 2009) for the proposition that the term "occasional" in the context of a Social Security disability case is a term of art and indicates that one may only perform the action up to one-third of the working day. In Hensley, the treating source had stated that the claimant could not perform repetitive pushing and pulling with the hands while an examining consultant had noted that the plaintiff was not limited in this area. Hensley, 573 F.3d at 265. The ALJ found that the plaintiff could perform "repetitive pushing and pulling with the hands occasionally," essentially splitting the difference between the two opinions, without indicating why the opinion of the treating source had been rejected and this was the ALJ's error. Hensley, 573 F.3d at 265. In the present action, the limitation to no more than occasional stooping would, by limiting the action to one-third of the day, preclude "repetitive" stooping.

Furthermore, Dr. Hoskins was an examining physician rather than a treating source. His opinion is outweighed by that of Dr. Lester, a treating physician, who

10-345 Lawrence Darren Lore

identified far fewer physical limitations since the administrative regulations provide that treating sources are entitled to more weight. 20 C.F.R. § 404.1527(d)(2). As previously noted, Dr. Lester was also cited in support of the administrative denial decision. Therefore, the court finds no error.

Finally, Lord argues that the ALJ erred by failing to properly analyze the evidence concerning whether his physical problems met the requirements of Section 1.04 of the Listing of Impairments concerning disorders of the spine. The ALJ found that this Listing was not met because the record did not indicate that the claimant's back pain was caused by nerve root compression, arachnoiditis, or lumbar stenosis. (Tr. 14). The plaintiff notes that the record reveals the existence of nerve root compression with such a finding made on an August, 2007 MRI scan. (Tr. 694). However, to meet the requirements of Section 1.04A, one must also show "neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight leg raising test (sitting and supine)." 20 C.F.R. Chapter III, Part 404, Subpart P, Appendix 1, Section 1.04A.[2] However, the ALJ did note that Dr. Michael Webb of Neurosurgical Associates found no L5-radiculopathy and indicated that sensation was intact throughout the lower extremities. (Tr. 15, 694). Dr. Dixit

---

[2]The plaintiff does not assert that he would meet either 1.04B concerning spinal arachnoiditis or Section 1.04C concerning lumbar spinal stenosis.

12

10-345  Lawrence Darren Lore

found a normal neurological examination and reported a negative straight leg raising test. (Tr. 15, 698). Dr. Brooks also noted a negative straight leg raising and indicated that the plaintiff's strength was excellent and he had no reflex asymmetry or sensory loss. (Tr. 16, 706). Therefore, the ALJ did consider the factors required to meet Section 1.04A and properly found that this Listing section was not met.

The undersigned concludes that the administrative decision should be affirmed. A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 9th day of February, 2012.

Signed By:

*G. Wix Unthank*

**United States Senior Judge**